UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | ) | |
| v. | ) | Case No. 25-CR-012-JFH |
| LESHON EUGENE JOHNSON,<br>Defendant. | ) | |

**DEFENDANT LESHON EUGENE JOHNSON'S SENTENCING MEMORANDUM**

COMES NOW Defendant Leshon Eugene Johnson, by and through undersigned counsel, and respectfully submits this Sentencing Memorandum in aid of sentencing. This filing is submitted under Federal Rule of Criminal Procedure 32, 18 U.S.C. § 3553(a), and Local Criminal Rule 32.1(D) of the United States District Court for the Eastern District of Oklahoma, which permits the defense to file a written statement of its position on sentencing factors, unresolved facts, and variance or departure issues after the final Presentence Investigation Report is provided and no later than seven days before sentencing.

For the reasons set forth below, Mr. Johnson respectfully asks the Court to adopt the Presentence Investigation Report's guideline calculation—total offense level 14, criminal history category I, advisory guideline range 15 to 21 months—deny the Government's requested enhancements and upward variance, decline to impose a fine, and impose a sentence at the low end of the advisory range, or such

lesser sentence as the Court finds sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

**I. Procedural Background**

On August 1, 2025, a jury returned guilty verdicts against Mr. Johnson on Counts 1, 2, 20, 21, 22, and 23 of the Superseding Indictment. The counts of conviction concern possession, sale, transport, and delivery of dogs for use in an animal fighting venture, in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. §§ 49 and 2. Each count is a Class D felony carrying a statutory maximum of not more than five years' imprisonment, not more than three years of supervised release, a fine of up to $250,000, and a $100 special assessment.

Mr. Johnson was arrested on March 20, 2025, released the same day, and later placed on pretrial supervision on June 4, 2025, on a $10,000 unsecured bond. The PSIR reports that he remains on bond pending sentencing and has been compliant with his pretrial supervision conditions, with no reported concerns or issues.

The PSIR calculates the advisory guideline range using the 2025 Guidelines Manual. The PSIR groups Counts 1, 2, 20, 21, 22, and 23 under U.S.S.G. § 3D1.2(d), applies U.S.S.G. § 2E3.1, sets a base offense level of 16, applies no specific offense characteristics, no role adjustment, and no obstruction adjustment, and applies the two-level zero-point offender reduction under U.S.S.G. § 4C1.1. The resulting total offense level is 14. Mr. Johnson has zero criminal history points and

is in Criminal History Category I. The resulting advisory imprisonment range is 15 to 21 months.

The defense asks the Court to adopt the PSIR's guideline calculation and reject the Government's effort to transform this case into a substantially higher-guideline case through obstruction, role, regrouping, and variance arguments that are not supported by the record.

## II. Who Is Leshon Johnson

Before the Court imposes sentence, it is important to pause and consider who Leshon Johnson is as a person. Mr. Johnson is not defined only by the counts of conviction. He is a 55-year-old man, a member of the Muscogee (Creek) Nation, a son, a brother, a husband, a father of six children, a former professional athlete, and a man now living with serious and progressive medical limitations. A just sentence must account not only for the offense, but also for the life of the person standing before the Court.

Mr. Johnson was born in Tulsa, Oklahoma, to Luther and Etta Johnson. He was raised with strong family support and described his childhood as a good one. He grew up as what he called a "country boy," enjoying hunting, fishing, sports, and caring for dogs. He was taught early to work hard and stay busy. That upbringing shaped the man he became—someone rooted in Oklahoma, strongly connected to family, and accustomed to finding purpose in work, activity, and responsibility.

Those values carried into adulthood. Mr. Johnson excelled athletically, earned a college scholarship while still in high school, graduated from Haskell High School, later earned an associate's degree from Northeastern Oklahoma A&M, and eventually completed a bachelor's degree in studio art from Northern Illinois University. His accomplishments reflect persistence and discipline. He went on to play in the National Football League from 1994 to 2001, an achievement that very few people ever attain. That chapter of his life required talent, sacrifice, and extraordinary commitment, but it also came at a cost. The same football career that brought him accomplishment also contributed to the concussions, traumatic brain injuries, chronic pain, dementia, and Parkinson's-related problems that now define much of his daily life.

Mr. Johnson's personal life also shows a man deeply connected to family. He has one full sibling and four half-siblings, and he reports close and supportive relationships with them. He had a strong relationship with his father before his father's passing in December 2025, and he remains close with his mother, with whom he speaks regularly. Family has remained a central part of his life, not an afterthought.

That is equally true of his role as a father. Mr. Johnson has six children from prior relationships: Clayton, Kelsey, Amarian, Legend, Legacy, and Lilly. He maintains good relationships with his children and their mothers and speaks with them weekly. He also continues to bear family responsibilities, including child support obligations. One of the painful realities in his family life is that his son

Amarian is presently undergoing cancer treatment for Hodgkin's lymphoma. That circumstance is significant. Mr. Johnson is not standing before the Court as an isolated person with no one depending on him. He remains part of an interconnected family system that still looks to him, cares for him, and is affected by what happens to him.

Mr. Johnson is now married to Jessica Johnson, and the record reflects that they have been together for many years and married since 2022. She is not a distant or nominal figure in his life. She helps him with appointments, scheduling, and day-to-day support, and she has stood by him throughout these proceedings. Their marriage is one of the clearest signs that Mr. Johnson still has a stable home, meaningful support, and a place to return to. In a case where so much has been said about allegations and punishment, it matters that Mr. Johnson still has people who know him personally, care for him faithfully, and continue to stand beside him.

His community life should also be viewed in full context. The record reflects that over the years he became well known in the dog community and that many people respected his knowledge, judgment, and experience. The information submitted on his behalf describes him as someone who dealt with hundreds of people, many of whom spoke highly of his dogs and breeding program. It also describes him as someone who regularly took in dogs that others no longer wanted or could no longer care for, providing food, shelter, and care. Whether or not every favorable characterization offered by supporters is ultimately adopted by the Court, those submissions help show that Mr. Johnson's life history is more complex than

a one-dimensional picture of criminal conduct. To the people who knew him personally, he was also someone with skills, knowledge, and a reputation built over many years.

What Mr. Johnson wants now is not grandiose. The record does not show a man making extravagant plans or asking for some dramatic new beginning. It shows a man who wants to continue living with his wife in Broken Arrow, Oklahoma, continue receiving the medical care he needs, remain active to the extent he is physically able, and preserve his relationships with his children and family. His physician has recommended walking, biking as tolerated, and physical therapy to help with balance and stiffness. In other words, Mr. Johnson's goals are modest, concrete, and deeply human: to manage his health, maintain dignity, stay connected to his family, and live as meaningfully as he can despite progressive medical decline.

That matters under 18 U.S.C. § 3553(a). Mr. Johnson is no longer the man he once was physically. He lives with severe dementia, Parkinson's disease, chronic pain, and the need for regular assistance with daily tasks, medication management, and memory issues. Whatever sentence the Court imposes will fall on a man whose life is already marked by substantial loss—loss of health, loss of independence, loss of livelihood, and the daily struggle that comes with neurological decline. A sentence that recognizes who he is in full—as a father, husband, son, former athlete, educated man, and medically compromised human being—will better reflect the individualized justice that federal sentencing requires.

**III. Governing Sentencing Standard**

Under 18 U.S.C. § 3553(a), the Court must impose a sentence "sufficient, but not greater than necessary" to satisfy the statutory purposes of sentencing. The Court must consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for just punishment, deterrence, protection of the public, needed medical care or correctional treatment, the kinds of sentences available, the advisory guideline range, pertinent policy statements, the need to avoid unwarranted disparities, and restitution.

The Guidelines are the starting point and initial benchmark, but they are advisory. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Federal Sentencing Guidelines are advisory rather than mandatory. In *Gall v. United States*, 552 U.S. 38 (2007), the Court confirmed that sentencing courts must begin by correctly calculating the advisory guideline range, permit the parties to argue for an appropriate sentence, and then make an individualized assessment based on the facts and all § 3553(a) factors. Gall also makes clear that a district court may not presume the guideline range is reasonable and must explain the chosen sentence sufficiently to permit meaningful review.

Sentencing is an individualized inquiry. The Supreme Court has recognized that a sentencing judge may consider broad information concerning a defendant's background, character, conduct, and present circumstances. *Pepper v. United States*,

562 U.S. 476 (2011). That principle is especially important here, where Mr. Johnson's severe neurological and physical health conditions materially affect the type of sentence necessary to meet the purposes of § 3553(a).

## IV. The Court Should Adopt the PSIR's Guideline Calculation

### A. The PSIR Correctly Applies No Obstruction Enhancement

The Government seeks a two-level obstruction enhancement under U.S.S.G. § 3C1.1 based on alleged false interview statements and an alleged false financial affidavit. The PSIR correctly applies no obstruction enhancement.

The interview-based theory rests on generalized statements made during an early-morning law-enforcement encounter and on the Government's characterization of those statements as materially false. The record does not establish that Mr. Johnson willfully made a material false statement that significantly impeded the investigation, prosecution, or sentencing. The defense has previously explained that statements about older dogs, sporadic breeding, and a few dogs located elsewhere do not establish a calculated effort to obstruct justice. Nor is phone decryption, without more, sufficient to establish a materially obstructed investigation or prosecution.

The financial-affidavit theory likewise does not support § 3C1.1. The defense has submitted information that any discrepancy arose from a misunderstanding about whether the original financial affidavit sought only Mr. Johnson's income and

assets or household income and assets. Once additional information was requested, an updated affidavit was submitted. The PSIR itself states that the Probation Officer has no information suggesting that Mr. Johnson impeded or obstructed the administration of justice in the investigation, prosecution, or sentencing of the instant offense. The Court should adopt that finding.

**B. The PSIR Correctly Applies No Aggravating Role Enhancement**

The Government seeks a four-level organizer-or-leader enhancement under U.S.S.G. § 3B1.1(a). The record does not establish five or more criminally responsible participants directed by Mr. Johnson, nor does it establish the decision-making authority, recruitment, control, or hierarchical structure necessary for that enhancement.

The Government's showing relies heavily on communications, dog-breeding transactions, and the existence of Mal Kant Kennels. Those facts, even if credited in part, do not establish a criminal organization with five or more participants or that Mr. Johnson controlled others in the manner required by § 3B1.1(a). The PSIR correctly applies no aggravating role adjustment.

**C. The PSIR Correctly Groups the Counts**

The PSIR groups Counts 1, 2, 20, 21, 22, and 23 under U.S.S.G. § 3D1.2(d), because the offense conduct is ongoing or continuous in nature and the relevant offense guideline is written to account for aggregate conduct. The Government has

not identified a contrary guideline directive requiring separate units for each count. The PSIR's grouping analysis should be adopted.

**D. Mr. Johnson Qualifies as a Zero-Point Offender**

The PSIR finds that Mr. Johnson meets the criteria for the two-level zero-point offender reduction under U.S.S.G. § 4C1.1. He has zero criminal history points. The Government's challenge to § 4C1.1 depends on its proposed role enhancement. Because the role enhancement is unsupported, the zero-point offender reduction remains properly applied.

**E. The Correct Advisory Range Is 15 to 21 Months**

With a base offense level of 16 under U.S.S.G. § 2E3.1, no role enhancement, no obstruction enhancement, and a two-level reduction under U.S.S.G. § 4C1.1, Mr. Johnson's total offense level is 14. With Criminal History Category I, the advisory guideline range is 15 to 21 months. The Government's proposed offense level and substantially higher range depend on enhancements and regrouping arguments that the Court should reject.

## V. Section 3553(a) Supports a Sentence No Greater Than Necessary

### A. The Nature and Circumstances of the Offense Do Not Justify an Upward Variance

Mr. Johnson recognizes the seriousness of the offenses of conviction. The federal animal-fighting statutes reflect Congress's judgment that animal fighting

ventures are serious crimes. The Court must impose a sentence that promotes respect for the law and provides just punishment.

At the same time, the sentence must be based on the actual convictions, the reliable record, and the individualized facts of this case. The jury did not convict Mr. Johnson of every allegation advanced by the Government. The defense has consistently disputed the Government's attempt to characterize Mr. Johnson's entire dog-breeding history and every dog in his possession as criminal relevant conduct. The record includes evidence that no dog fighting was observed on the properties, despite surveillance, and the defense disputes the Government's effort to infer criminality from all aspects of Mr. Johnson's breeding operation.

The PSIR's advisory guideline calculation already accounts for the offense of conviction. The Government's request for an upward variance based on "scale" risks punishing Mr. Johnson for contested and acquitted or unproven conduct in a manner that overstates the offense conduct found by the jury. A sentence within or below the correctly calculated range is sufficient to address the seriousness of the convictions without adopting unsupported enhancements or speculative aggravation.

**B. Mr. Johnson's History and Characteristics Strongly Mitigate the Sentence**

Mr. Johnson is 55 years old, a citizen of the Muscogee (Creek) Nation, and a former professional football player. He played in the NFL from 1994 to 2001 for

the Arizona Cardinals, New York Giants, and Green Bay Packers. Since 2014, he has been unemployed due to dementia.

His medical history is unusually serious. He was diagnosed in 2015 with severe dementia, Parkinson's disease as of April 2024, multiple concussions and traumatic brain injuries from his football career, chronic pain, a history of Hodgkin's lymphoma, borderline diabetes, and the need for two knee replacements. He takes multiple prescribed medications, including medications for dementia, Parkinson's disease, restless leg syndrome, migraines, pain, and blood thinning. He has had a weekday caretaker for approximately two years to assist with daily tasks, chores, medication management, and memory issues, while his wife assists on weekends.

Those conditions matter under § 3553(a)(1) and § 3553(a)(2)(D). They affect Mr. Johnson's day-to-day functioning, his risk profile, the burden incarceration would impose, and the need to ensure access to medical care in the most effective manner. A lengthy custodial sentence would be more punitive for Mr. Johnson than for a healthy defendant and would risk interrupting established medical treatment and caregiving arrangements.

A June 11, 2026, medical note further confirms that movement in the form of biking and walking is helpful for Mr. Johnson, recommends as much biking and walking as he can tolerate, and states that he will begin physical therapy to help with balance and stiffness. That note directly rebuts the Government's effort to treat Mr. Johnson's participation in biking activity as inconsistent with his medical

limitations. His effort to remain active is not evidence of malingering; it is medically recommended activity.

**C. Mr. Johnson Has Strong Family Support and Community Ties**

Mr. Johnson has meaningful family support. His wife, Jessica Johnson, is supportive and helps with medical appointments and scheduling. He also has supportive relationships with his mother, siblings, and children. He has lived in Broken Arrow, Oklahoma for approximately 12 years and wishes to continue residing there with his wife.

Family support is important because it reduces risk, assists with medical compliance, and provides structure. In this case, it also supplies practical care that would be difficult to replicate in a custodial setting. Jessica Johnson's letter explains that she assists in documenting Mr. Johnson's medical and factual circumstances and is prepared to provide additional information before sentencing.

**D. Mr. Johnson's Compliance on Bond Demonstrates That a Lengthy Sentence Is Not Needed to Protect the Public**

Mr. Johnson was released after arrest and has remained on bond pending sentencing. The PSIR reports no concerns or issues with his pretrial supervision compliance. That record supports the conclusion that he can comply with court orders and supervision conditions.

Given his age, severe health conditions, lack of criminal history points, and compliance while on release, a lengthy prison term is not necessary to protect the

public from future crimes. Nor is an upward variance necessary to afford adequate deterrence. The convictions themselves, the loss of his dogs, the financial and emotional consequences of the prosecution, and a sentence within or below the properly calculated range provide substantial deterrent effect.

### E. A Low-End or Below-Guideline Sentence Is Consistent With Avoiding Unwarranted Disparities

The correctly calculated guideline range promotes national uniformity by anchoring the sentence to the Sentencing Commission's framework. At the same time, § 3553(a) requires the Court to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct—not to ignore individualized facts that make a defendant materially different. In other words, punishment is not a one size fits all.

Mr. Johnson's severe neurological impairment, Parkinson's disease, daily-care needs, age, zero criminal history points, and compliance on bond distinguish him from a typical defendant. A sentence at the low end of the advisory range, or a lesser sentence supported by the Court's individualized assessment, would not create an unwarranted disparity. It would reflect the record before the Court.

## VI. The Court Should Decline to Impose a Fine

Mr. Johnson's current financial profile, he is unable to pay a fine within the advisory guideline range. Although the PSIR lists assets and household income, it also documents substantial monthly expenses, including child support, medical

expenses, health insurance, and caretaker expenses. The reported monthly cash flow is negative. The Court should decline to impose a fine because a fine would impair Mr. Johnson's ability to meet medical, caregiving, and family-support obligations and would not materially advance the purposes of sentencing.

The mandatory special assessment is $100 per count, for a total of $600. Mr. Johnson recognizes that the special assessment is mandatory.

**VII. Conclusion**

Mr. Johnson does not minimize the seriousness of the convictions. But federal sentencing law requires an individualized sentence that is sufficient and no greater than necessary. The PSIR's advisory range of 15 to 21 months already accounts for the offense of conviction. The Government's requested enhancements and upward variance would overstate the record and fail to account for Mr. Johnson's severe medical conditions, zero criminal history points, compliance on bond, family support, and need for ongoing medical care.

For these reasons, Mr. Johnson respectfully asks the Court to adopt the PSIR's calculation, deny the Government's requested enhancements and upward variance, decline to impose a fine, and impose a low-end guideline sentence or lesser sentence sufficient but not greater than necessary under § 3553(a).

Respectfully Submitted,

/s/ John W. "Billy" Coyle, IV
John W. "Billy" Coyle, IV
125 Park Ave., 1st Floor
Oklahoma City, Oklahoma 73102
Telephone: 405-415-4537
Cell: 405-830-5288
Email: bc@coylelaw.com
Attorney for Defendant
Leshon Eugene Johnson

**Certificate of Service**

I hereby certify that on this 13th day of August 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to counsel of record.

/s/ John W. "Billy" Coyle, IV
**John W. "Billy" Coyle, IV**